UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CANDICE BISHOP AND ) | |
| DARRYL MITCHELL AND ) | |
| NINA CURRY, Individually and as the ) | |
| Surviving Heirs of DM, DM and CM, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:09CV1718MLM |
| ) | |
| NICO TERRACE APARTMENTS, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

On June 14, 2010 this matter came before the court for a hearing on the apportionment of the settlement proceeds in this matter. The parties have briefed their respective positions. [Docs. 18 and 19] This case arises out of a fire which occurred on August 8, 2009 at the Nico Terrace Apartments as a result of which three minor children died.[1] The children, DM, age 6, DM, age 4, and CM, age 21 months were the children of Candice Bishop and Darryl Mitchell. They were staying with Mr. Mitchell and their grandmother, Nina Curry at Ms. Curry's apartment in the Nico Terrace Apartments at the time of the fire. Count I of plaintiff's First Amended Petition (Doc. 4) is a claim for wrongful death filed by Candice Bishop and

---

[1] Candice Bishop has filed a Wrongful Death suit against Darryl Mitchell and Nina Curry in St. Louis County Circuit Court alleging their negligence caused the death of the three children.

Darryl Mitchell, the natural parents of the children.[2] The parties have settled this claim for $45,000.00, and have requested and been granted approval of this settlement by the court. (Doc. 20)

Section 537.095.3 R.S.Mo. provides in pertinent part:

In any action for damages under §537.080 the trier of the facts shall state the total damages found, or **upon approval of any settlement** for which a petition for application of such approval has been filed, the court shall state the total settlement approved.  The court shall then enter a judgment as to such damages, **apportioning them among those persons entitled thereto in proportion to the losses suffered by each as determined by the court.**

## FINDINGS OF FACT

At the hearing, Darryl Mitchell testified he was twenty years old when the oldest child was born.  Candice Bishop was in high school but he could not recall the name of the school.  He said that at that time, Ms. Bishop had primary custody of the child but they "stayed together" sometimes.  Mr. Mitchell testified that of the six years of the oldest child's life, they lived together primarily the last three years and they stayed on Temple. However, he also testified that for the last year before the children's death, he stayed at Nico Terrace with his mother, Nina Curry.  He did seasonal work at Busch Stadium and held fast-food jobs.  He claimed both he and Ms. Bishop provided financial support during the last three years for the three children.  He said the children were getting welfare even though he was living with

---

[2] Count II is a claim by Darryl Mitchell for the injuries he suffered during the fire and Count III is a claim by Nina Curry for the injuries she suffered during the fire.  These claims have also been settled but do not require approval by the court.  The parties will file appropriate settlement/dismissal papers.

them on Temple. Mr. Mitchell said he reimbursed the government often. However, Candice Bishop Exhibit 3 is a record from the Missouri Department of Social Services concerning the second child showing that in 2005 he reimbursed nothing; in 2006 he reimbursed nothing; in 2007 he reimbursed $69.31, $47.08 and $95.84; in 2008 he reimbursed $43.04; and in 2009 through August, he reimbursed nothing. In 2010, after the death of the children, $875.00 was withheld from his tax refund.[3] Mr. Mitchell denied he was "letting the state take care of them." He said from time to time he gave Ms. Bishop money which he described as "whatever I could do." He said he gave her $10 or $20 but indicated "I can't really say" when asked how often. He said he gave her money whenever he had it and whenever she needed it. He said he had the children at the time of the fire. He did not know if it was on a weekend that the fire occurred. He said sometimes he took the children to school, sometimes he cooked for them and sometimes he played with them.

He and Ms. Bishop never married. When prompted he said he worked for Mitch Murch Maintenance sometimes. He was vague about whether the children lived on Temple or Cote Brilliante at the time of their deaths. He completely forgot about the Kennerly address and he said he forgot about the Cote Brilliante address but indicated that from April to July, 2009 they were with their mother on Cote Brilliante or Temple. Throughout his testimony, he recalled very little until prompted by counsel.

---

[3] Candice Bishop Exhibit 4 is a record from the Missouri Department of Social Services concerning the oldest child showing a similar pattern of reimbursement.

He said he was close to the children and loved them. He has their names tattooed on his neck. He said he believed a fair division of the settlement proceeds would be "half and half."

His attorney introduced the contract for legal fees which shows an agreement to pay one-third of the proceeds after costs and expenses. Darryl Mitchell Exhibit A.

Candice Bishop testified she does not question the testimony that Darryl Mitchell loved the children. At the time of their deaths they were in her custody but Mr. Mitchell would keep them sometimes on weekends or on the days when they were not in school. She said she was living on Cote Brilliante with her aunt when the children died. However, from April to July, 2009 they were in Detroit with their grandmother. Before April of 2009 she lived on Kennerly with her mother and three brothers. Mr. Mitchell did not live with her at any time in 2009 but from 2006 through 2008 she lived on Temple with Mr. Mitchell and the children; however, Mr. Mitchell did not live there constantly. She said Mr. Mitchell provided for the oldest child when he worked at Burger King but when the other children came along he very seldom provided support. He would give her $10 or $20 if he had it.

She provided the majority of the support for the two younger children. She said that during the lives of the children she had primary custody and provided primary financial support. She said Mr. Mitchell loved the children and did the best he could. She said when the children were in Detroit, Mr. Mitchell called them (although Mr. Mitchell did not recall this himself and said "it slipped his mind".)

Ms. Bishop had a contract with her attorney that provided for one-third of settlement proceeds[4] after costs and expenses. Candice Bishop Exhibit 1. She paid approximately $14,980.43 for an expert to determine the cause of the fire and had additional costs and expenses for a total of $15,742.17. Candice Bishop Exhibit 2.

The court finds Mr. Mitchell had considerable difficulty recalling even the most pertinent events and was not forthcoming about his testimony concerning his relationship with the children. He was not a particularly willing witness and his testimony lacked credibility.

Ms. Bishop was a credible witness and was forthright about her testimony. In fact, she did more for Mr. Mitchell's case than he did himself. Although she did not testify what she believed would be a fair division of the settlement proceeds, her brief indicates she believes she is entitled to one hundred percent. She clearly had been the primary custodian, care-giver and financial provider.

## CONCLUSIONS

"The apportionment of settlement proceeds in a wrongful death action is a matter within the . . . court's discretion." Kavanaugh v. Mid-Century Ins. Co., 937 S.W.2d 243, 246 (Mo.Ct.App. 1996), citing Haynes v. Bohon, 878 S.W. 2d 902, 904 (Mo.Ct.App. 1994). The court is not required to award an equal portion of the settlement proceeds to each person included in the class of persons entitled to sue

---

[4] Her contract was with Edward DeGhroony who asked Paul Passanante to work with him.

for wrongful death.  See Kavanaugh, 937 S.W.2d at 246; Wright v. Cameron Mutual Ins., 908 S.W.2d 867, 869-70 (Mo.Ct.App. 1995); Haynes, 878 S.W.2d at 905.  In Missouri wrongful death settlement cases, apportionment is based solely on the losses suffered by each beneficiary.  §537.095.3 R.S.Mo.; Kavanaugh, 937 S.W.2d at 869 (considering father's close relationship with son, working, hunting and fishing together as well as mother's close relationship with her son, reliance on him for counsel, comfort and advice and his promise to take care of her); Haynes, 878 S.W.2d at 904 (considering child lived continuously with mother, father did not marry mother until child was 7, father was absent from the home for varying amounts of time for varying reasons, father was separated from mother for two years prior to the accident, father failed to support child regularly as well as the fact that the child had lived continuously with mother from time she was born and mother had to rely on government programs to meet child's needs); Glasco, 709 S.W.2d at 552 (father had minimum contacts with child, failed to legitimize child, failed to show responsibility with respect to supervision, child support, protection and care; Denton v. Soonattrukal, 149 S.W.3d 517, 524 (Mo.Ct.App.2004) (holding "fundamental consideration [is] that the manifest purpose of the wrongful death statute is to provide compensation for the loss of the companionship, comfort, instruction, guidance and counsel, etc.. . ."); Parr v. Parr, 16 S.W.3d 332, 335 (Mo.Ct.App. 2000) (considering father's loss of adult son as devastating, sharing a loving father-son relationship, enjoying same activities and discussing things,

**helping repair rental properties and working on motorcycles as well as wife's economic and non-economic damages suffered after 34 years of marriage).**

In the present case, the children lived continuously with Ms. Bishop. Mr. Mitchell' residence at the home on Temple was sporadic from 2006 to 2008 and he took them only occasionally on weekends. Mr. Mitchell was absent from the home on Temple, Cote Brilliante and Kennerly for varying amounts of time for unstated reasons. Mr. Mitchell was separated from Ms. Bishop at the time of the fire. Mr. Mitchell's financial support was inconsistent and amounted only to $10 to $20 whenever he had it. Ms. Bishop was forced to rely on government programs to meet the children's needs and Mr. Mitchell's reimbursement of the Department of Social Services was so infrequent and in such small amounts as to be practically non-existent. Although it is undisputed that Mr. Mitchell "loved" the children, he failed to shoulder his responsibilities. It was Ms. Bishop who assumed the role of responsible parent who supervised, supported, protected and cared for the children.

The court therefore finds that the $45,000.00 settlement proceeds be apportioned in proportion to the losses suffered by each party as follows: $35,000.00 to Ms. Bishop and $10,000.00 to Mr. Mitchell.

Concerning attorney's fees, §537.095.4(2) R.S.Mo. requires the court to order payment of attorney's fees as contracted. <u>Kavanaugh</u>, 937 S.W. 2d at 247; <u>Haynes</u>, 878 S.W.2d at 905. Both parties had contractual arrangements with their attorneys and the court will therefore order payment of attorney's fees as contracted, to be paid out of their respective settlement proceeds.

Accordingly,

**IT IS HEREBY ORDERED** that the $45,000.00 settlement proceeds which have been deposited by Nico Terrace Apartments, LLC in the registry of the court and which were approved by this court be apportioned as follows: $35,000.00 to Candice Bishop; $10,000.00 to Darryl Mitchell.

**IT IS FURTHER ORDERED** that each party shall pay his/her attorney's fees as contracted, to be paid out of their respective settlement proceeds.

**IT IS FURTHER ORDERED** that a separate judgment shall issue contemporaneously herewith.

/s/Mary Ann L. Medler
**MARY ANN L. MEDLER**
**UNITED STATES MAGISTRATE JUDGE**

Dated this   23rd   day of  June, 2010.